# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CONNIE ANNE DAY,** | : | No. 3:17cv2288 |
| **Plaintiff** | : | |
| | : | (Judge Munley) |
| v. | : | |
| | : | |
| **WILMINGTON SAVINGS FUND SOCIETY FSB; CARRINGTON HOME MORTGAGE SERVICES, LLC; and CARRINGTON HOME SOLUTIONS, L.P.,** | : | |
| **Defendants** | : | |

## MEMORANDUM

Before the court for disposition are two motions filed by the defendants. The first motion—filed by Defendant Carrington Home Solutions, L.P. (hereinafter "CHS")—seeks dismissal of the plaintiff's Intentional Infliction of Emotional Distress (hereinafter "IIED"), Negligent Infliction of Emotional Distress (hereinafter "NIED"), and Punitive Damages claims. The second motion—filed by Defendants Carrington Home Mortgages Services (hereinafter "CMS") and Wilmington Savings Fund Society FSB (hereinafter "WSFS")—seeks dismissal of the plaintiff's Fair Credit Extension Uniformity Act (hereinafter "FCEUA"), Pennsylvania Unfair Trade Practices and Consumer Protection Law (hereinafter "UTPCPL"), and Fair Debt Collection Practices Act (hereinafter "FDCPA") claims. Both motions have been briefed and the matter is ripe for disposition.

**Background**

Plaintiff, Connie Anne Day, owned a piece of real property located at 287 Longwoods Drive, Saylorsburg, Monroe County Pennsylvania (hereinafter the "Property"). (Doc. 1, Compl. ¶ 8). The plaintiff used this Property as her residence. (Id.)

Wells Fargo (hereinafter "Wells") extended the plaintiff credit for the property under a mortgage dated June 19, 2006. (Id. ¶ 10). Wells alleged that it was entitled to monthly mortgage payments. According to Wells, the plaintiff defaulted on those payments. As such, in December 2015, Wells initiated a mortgage action against the plaintiff in the Monroe County Court of Common Pleas. (Id. ¶¶ 9-10).

Based on the foreclosure action, the court ordered the parties to participate in mediation. During the mediation process, the plaintiff's mortgage was transferred from Wells to Defendant WSFS as trustee for Stanwich Mortgage Loan Trust A, a fact that Defendant CMS communicated to the plaintiff in a letter dated December 28, 2016. (Id. ¶ 13). Specifically, the letter instructed the plaintiff that her loan was sold to WSFS and would be serviced by Defendant CMS. As a result of the mediation process, the plaintiff was offered and completed a trial mortgage modification. (Id. ¶ 15).

On February 8, 2017, Wells's legal counsel notified the plaintiff's attorney that the new servicer, CMS, would ". . . generate the final mod docs." (Id. ¶ 16).

On March 1, 2017, the plaintiff returned home from work to find stickers—stating that the home was abandoned—affixed to her front door by Defendant CHS. (Id. ¶ 17). Upon finding these notices, the plaintiff contacted Defendant CHS and notified them that her Property was not abandoned and that Defendant CMS granted her a loan modification. (Id.) Defendant CHS assured the plaintiff that the stickers would be removed. (Id.)

Five days later, the plaintiff received notice from her home security company that the alarm at her home had been set off. When the plaintiff arrived at the Property later that day, she found that all exterior door locks had been changed, leaving her unable to gain entry. (Id. ¶ 21). The plaintiff could not enter her locked Property for approximately one month. (Id. ¶ 23). Upon her return to the property, she discovered the following damages: a destroyed ADT alarm panel, disconnected appliances including electrical and water, which caused spoilage to food in her refrigerator and severe water damage to her hardwood floors. (Id. ¶ 26).

On May 26, 2017, Defendant CMS sent correspondence to the plaintiff enclosing a fully executed copy of the loan modification, which set the plaintiff's monthly mortgage obligation at $1,238.97 per month. (Id. ¶ 28).

Based on these facts, the plaintiff initiated this lawsuit against defendants WSFS, CHS, and CMS for unlawfully entering the plaintiff's residence, damaging the plaintiff's property, and locking the plaintiff out of the property without the plaintiff's consent or court authority. The plaintiff also seeks recovery under an unfair trade practice theory, claiming that CMS sends her monthly statements seeking payments in excess of the modified monthly payment obligation.

The plaintiff's complaint raises the following 7 causes of action: Count 1, Trespass, against WSFS, CMS, and CHS; Count 2, Negligence, against WSFS, CMS, and CHS; Count 3, Invasion of Privacy—Intrusion Upon Seclusion, against WSFS, CMS, and CHS; Count 4, IIED, against WSFS, CMS, and CHS; Count 5, NIED, against WSFS, CMS, and CHS; Count 6, Violations of the FCEUA under 73 PA. STAT. § 2270.1 et seq. and the Pennsylvania UTPCPL pursuant to 73 PA. STAT. § 201-1 et seq., against WSFS and CMS; and Count 7, Violations of the Fair Debt Collection Practices Act pursuant to 15 U.S.C. § 1692 et seq.

Defendant CHS moves for dismissal on Counts 4 and 5 of the Complaint. Likewise, Defendants WSFS and CMS move for dismissal on Counts 6 and 7 of the Complaint, bringing the case to its present posture.

**Jurisdiction**

As this case is brought pursuant to 15 U.S.C. § 1692 for federal debt collection violations, we have jurisdiction under 28 U.S.C. § 1331 ("The district

4

courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."). We have supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

**Legal Standard**

The defendants filed their motions to dismiss plaintiff's complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. When a 12(b)(6) motion is filed, the sufficiency of the allegations in the complaint is tested. Granting the motion is appropriate if, accepting as true all the facts alleged in the complaint, the plaintiff has not pleaded "enough facts to state a claim to relief that is plausible on its face," or put another way, "nudged [his or her] claims across the line from conceivable to plausible." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). The Third Circuit interprets Twombly to require the plaintiff to describe "enough facts to raise a reasonable expectation that discovery will reveal evidence of" each necessary element of the claims alleged in the complaint. Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (quoting Twombly, 550 U.S. at 556). Moreover, the plaintiff must allege facts that "justifying moving the case beyond the pleadings to the next stage of litigation." Id. at 234-35.

The issue is whether the facts alleged in the complaint, if true, support a claim upon which relief can be granted. In deciding a 12(b)(6) motion, the court

must accept as true all factual allegations in the complaint and give the pleader the benefit of all reasonable inferences that can fairly be drawn therefrom, and view them in the light most favorable to the plaintiff.  Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997).  To decide a motion to dismiss, a court generally should consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim.  See In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d. Cir. 1997); Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).

**Discussion**

As noted above, the defendants have filed two motions to dismiss.  The first motion—filed by Defendant CHS—seeks dismissal of the plaintiff's IIED, NIED, and Punitive Damages claims.  The second motion—filed by Defendant CMS and WSFS—seeks dismissal of the plaintiff's FCEUA, UTPCPL, and FDCPA claims.  We will discuss each motion separately beginning with CHS's Motion.

## I. CHS's Motion to Dismiss

Defendant CHS moves to dismiss the plaintiff's IIED, NIED, and Punitive Damages claim averring that by signing the Mortgage, the plaintiff consented to the securing of the property upon her failure to make her monthly payments under the mortgage. We will first address the plaintiff's IIED claim.

### a. Intentional Infliction of Emotional Distress

First, CHS challenges the legal sufficiency of the plaintiff's IIED claim. Under Pennsylvania law, for a claim of IIED: "(1) the conduct [of the defendant] must be extreme and outrageous; (2) it must be intentional or reckless; (3) it must cause emotional distress; [and] (4) that distress must be severe." Hoy v. Angelone, 691 A.2d 476, 482 (Pa. Super. Ct. 1997). Courts "[allow] recovery only in very egregious cases." Id. At the pleadings stage, the court is "to decide as an initial matter whether the conduct at issue can reasonably be regarded as sufficiently extreme to constitute 'outrageousness' as a matter of law." Smith v. Sch. Dist. of Philadelphia, 112 F. Supp. 2d 417, 427 (E.D. Pa. 2000).

As a matter of law, outrageousness occurs only when "'the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'outrageous.'" Id. at 428 (quoting Hunger v. Grand Central Sanitation, 670 A.2d 173 (Pa. Super. Ct. 1996)). Courts have limited outrageous conduct to that which is "'atrocious'

7

and 'utterly intolerable in a civilized community.'" Id. (quoting Banyas v. Lower Bucks Hosp., 437 A.2d 1236 (Pa. Super. Ct. 1981)).

In the instant matter, Defendant CHS argues that the plaintiff's claim for IIED should be dismissed because by signing the Mortgage, plaintiff consented to the securing of the Property upon her failure to make her monthly mortgage payments under the terms of the Mortgage. Defendant CHS claims that because the plaintiff was in default of the Mortgage, its conduct—changing the locks to the plaintiff's home—cannot be deemed to be "outrageous." Ultimately, Defendant CHS contends that the plaintiff has failed to plead a claim for IIED.

The plaintiff, however, avers that she has pleaded sufficient facts for an IIED claim. We agree with the plaintiff.

The plaintiff alleges that although Defendant CHS knew that she continued to reside at the house, the defendant still elected to forcibly enter the plaintiff's home, without consent, authorization, or the legal right to do so. (Doc. 1, Comp. ¶ 30, 31, and 32). The plaintiff also claims that Defendant CHS changed the locks to the plaintiff's property, preventing her from gaining entry into her home as a part of an effort by CHS to secure the property. (Id.) Upon gaining access to the property approximately one month later, the plaintiff claims that she found her home damaged. (Id.) Specifically, she found a destroyed ADT alarm panel, disconnected appliances including electrical and water, which caused spoilage to

food in her refrigerator, and severe water damage to her hardwood floors. (Id. ¶ 26). Viewing these allegations of the complaint as true and in the light most favorable to the plaintiff, we find that the plaintiff has pled enough facts to justify moving the plaintiff's IIED claim beyond the pleadings stage.

### b. Negligent Infliction of Emotional Distress

Next, Defendant CHS moves to dismiss the plaintiff's NIED claim. The defendant contends that the plaintiff has failed to state a claim for NIED and her claim should, therefore, be dismissed. The plaintiff, however, argues that she has met the pleading standard pursuant to Federal Rule of Civil Procedure 12(b)(6). We agree with the plaintiff.

A cause of action for NIED is restricted to four factual scenarios: (1) situations where the defendant had a contractual or fiduciary duty toward the plaintiff; (2) the plaintiff was subjected to physical impact; (3) the plaintiff was in a zone of danger, thereby reasonably experiencing a fear of impending physical injury; or (4) the plaintiff observed a tortious injury to a close relative. Doe v. Philadelphia Community Health Althernatives AIDS Task Force, 745 A.2d 25, 27 (Pa. Super. Ct. 2000), aff'd, 767 A.2d 548 (Pa. 2001).

Here, the plaintiff's allegations fall within the physical impact category. To claim physical impact on NIED grounds, the plaintiff must plead that the defendant's actions caused a "lasting physical or emotional effect." Id. at 29.

The plaintiff's claim that Defendant CHS's conduct caused her to experience extreme fear and anxiety, loss of sleep, focus, nausea, and depression articulates a lasting physical and emotional effect. (Doc. 1, Compl. ¶ 97). The plaintiff's reactions, therefore, may constitute a physical impact for purposes of NIED. These allegations "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Twombly, 550 U.S. at 570 (citing Conley v. Gibson, 355 U.S. 41, 47 (1957)).

As such, the plaintiff has pled sufficient facts to justify moving this case beyond the pleadings to the next stage of litigation. We will deny Defendant CHS's motion seeking to dismiss the plaintiff's NIED claim.

### c. Punitive Damages

CHS also moves to dismiss the plaintiff's claim for punitive damages. Pennsylvania courts have embraced the guideline of Section 908(2) of the Restatement (Second) of Torts regarding the imposition of punitive damages: "Punitive damages may be awarded for conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others." See RESTATEMENT (SECOND) OF TORTS § 908 (2); see also Chuy v. Phila. Eagles Football Club, 595 F.2d 1265, 1277 (3d Cir. 1979); Feld v. Merriam, 485 A.2d 742, 747 (Pa. 1984).

To state a claim for punitive damages, the plaintiff must plead facts that the defendant either acted with an evil motive or with reckless indifference to the rights of others. "The state of mind of the actor is vital. The act, or the failure to act, must be intentional, reckless or malicious." Feld, 485 A.2d at 748. In evaluating a request for punitive damages, "one must look to 'the act itself together with all the circumstances including the motive of the wrongdoers and the relations between the parties.'" Id. (quoting Chambers v. Montgomery, 192 A.2d 355, 358 (Pa. 1963)). The purpose of punitive damages is to punish wrongdoers for the outrageous conduct done in reckless disregard for another person's rights. Shecter v. Watkins, 577 A.2d 585 (Pa. Super. Ct. 1990).

Here, CHS avers that the plaintiff's Punitive Damages claim should be dismissed because the Complaint does not provide a factual basis to support a finding of conduct that is egregious enough to warrant punitive damages. The plaintiff, however, contends that she has pleaded sufficient facts for a Punitive Damages claim in the Complaint. We agree with the plaintiff.

The plaintiff alleged that the defendant, with knowledge that the plaintiff occupied the property, excluded the plaintiff from her residence forcing her to find other accommodations for one month, disabled the armed home security system, changed the locks, destroyed the property, and shut off the heating and plumbing systems. (Doc. 1, Comp. ¶ 26 and 27). That Defendant CHS acted with reckless

indifference to the property rights of the plaintiff is plausible and gives CHS fair notice of the plaintiff's Punitive Damages claim. Twombly, 127 S. Ct. at 1964 (citing Conley, 355 U.S. at 47).

Therefore, the plaintiff has pleaded sufficient facts to justify moving this case beyond the pleadings to the next stage of litigation. We will deny Defendant CHS's motion seeking to dismiss the plaintiff's Punitive Damages claim.

## II. CMS and WSFS's Motion to Dismiss

Defendants CMS and WSFS move to dismiss the plaintiff's FCEUA and UTPCPL claims on the basis that the plaintiff failed to plead that she justifiably relied on the defendants and suffered an ascertainable loss therefrom. The defendants also move to dismiss the plaintiff's FDCPA claim on grounds that the defendant is not a debt collector under the meaning of the FCEUA. We will first address the plaintiff's FCEUA and UTPCPL claims.

### a. Fair Credit Extension Uniformity Act and the Pennsylvania Unfair Trade Practices and Consumer Protection Law

Count 6 of the plaintiff's complaint asserts a cause of action for violation of the FCEUA and UTPCPL. CMS and WSFS move to dismiss the plaintiff's claims under the FCEUA and UTPCPL. The FCEUA prohibits the use of false, deceptive, or misleading representation or means with the collections of any debt. 73 PA. STAT. ANN. § 2270.1 (West). The text of the FCEUA's enforcement provision reads: "If a debt collector or creditor engages in an unfair or deceptive

12

debt collection act or practice under this act, it shall constitute a violation of the [UTPCPL]." 73 PA. STAT. ANN. § 2270.4 (West). Because the FCEUA does not provide individuals with the right to institute private causes of action for violations, individual plaintiffs must use 73 PA. STAT. § 201-9.2—the remedial provision of the UTPCPL—to obtain relief. Benner v. Bank of Am, N.A., 917 F. Supp. 2d 338, 359 (E.D. Pa. 2013).

In Kern v. Lehigh Valley Hosp., Inc., 108 A.3d 1281, 1290 (Pa. Super. Ct. 2015), the Pennsylvania Superior Court held that a plaintiff proceeding under the UTPCPL's remedial provision on a FCEUA claim must plead an ascertainable loss resulting from justifiable reliance on the defendant's conduct in order to survive a Rule 12(b)(6) motion. The Third Circuit has adopted Kern's interpretation of the pleading requirements under the FCEUA and UTPCPL, which requires plaintiffs asserting this claim to plead an ascertainable loss and justifiable reliance. Kaymark v. Bank of Am., N.A., 783 F.3d 168, 182 (3d Cir. 2015). Accordingly, the plaintiff must plead an ascertainable loss and justifiable reliance in order to survive a Rule 12(b)(6) motion for her FCEUA claim.

Here, the defendant contends that the plaintiff failed to claim that she relied on the defendant's actions or suffered any ascertainable loss as a result of justifiably relying upon the allegedly incorrect mortgage statement.

The plaintiff, however, claims violations under the FCEUA and UTPCPL on two grounds. On the first ground, the plaintiff claims that the defendants improperly determined that the Property was vacant and thereafter improperly secured the Property by changing the door locks. (Doc. 1, Comp. ¶ 104). On the second ground, the plaintiff contends that an August 1, 2017 monthly mortgage statement sent to the plaintiff did not reflect the terms of a Loan Modification Agreement that the plaintiff signed on May 26, 2017. (Id. ¶ 103). We agree with the plaintiff.

The plaintiff relied on the fact that she entered into a mortgage modification with the defendants. Because she relied on the mortgage modification terms, she did not anticipate the defendant entering her home without permission, disabling the alarm system, changing the locks, destroying personal property, and shutting off utilities. (Doc. 1, Comp. ¶ 26, 27, 96, 104, 105). The plaintiff alleges that the defendants' actions caused her to suffer ascertainable losses, forcing her to find other accommodations for one month and separating her from her personal property. (Id.)

As a result, the plaintiff has pleaded sufficient facts showing ascertainable loss and justifiable reliance. The court will deny the defendants' motion to dismiss regarding the plaintiff's FCEUA and UTPCPL claims.

### b. Fair Debt Collection Practices Act

Finally, CMS and WSFS move to dismiss the plaintiff's FDCPA claim on the basis that the defendants are not debt collectors.

To state a cause of action under the FDCPA, a plaintiff must allege that: "(1) [the Plaintiff] is a consumer, (2) the defendant is a debt collector, (3) the defendant's challenged practice involves an attempt to collect a 'debt' as the Act defines it, and (4) the defendant has violated a provision of the FDCPA in attempting to collect the debt." Douglass v. Convergent Outsourcing, 765 F.3d 299, 303 (3d Cir. 2014) (citing Piper v. Portnoff Law Assocs., Ltd., 396 F.3d 227, 232 (3d Cir. 2005)).

Generally, the FDCPA's provisions apply only to "debt collectors." Pettit v. Retrieval Masters Creditors Bureau, Inc., 211 F.3d 1057,1059 (7th Cir. 2000). "Creditors—as opposed to debt collectors—generally are not subject to the FDCPA." See Aubert v. American Gen. Fin., Inc., 137 F.3d 976, 978 (7th Cir. 1998) ("Creditors who collect in their own name and whose principal business is not debt collection . . . are not subject to the Act . . . . Because creditors are generally presumed to restrain their abusive collection practices out of a desire to protect their corporate goodwill, their debt collection activities are not subject to the Act unless they collect under a name other than their own."); Staub v. Harris,

626 F.2d 275, 277 (3d Cir. 1980) ("The [FDCPA] does not apply to persons or businesses collecting debts on their own behalf.").

The FDCPA contains a detailed definition of "debt collector." See 15 U.S.C. § 1692a(6). The term means "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." Id.

After a careful review, we find that the defendants are not debt collectors for purposes of the FDCPA.

First, WSFS is the owner of the Mortgage at issue and therefore is a creditor and not a debt collector under the FDCPA. In the Complaint, the plaintiff admits that WSFS is the owner of the Mortgage:

> 13. During the mediation process [the plaintiff's] Mortgage was sold[,] assigned[,] or otherwise transferred to WSFS as trustee for Stanwich Mortgage Loan Trust A, a fact that [the plaintiff] was made aware of by [CMS] letter dated December 28, 2016.
>
> \*  \*  \*
>
> 14. The December 28, 2016 letter instructed [the plaintiff] that her loan was sold to [WSFS] as trustee for Stanwich Mortgage Loan Trust A and that the loan was being serviced by [CMS].

(Compl. ¶¶ 13, 14).

16

Second, WSFS is not a "debt collector" subject to regulation by the FDCPA because it is not "in any business the principal purpose of which is the collection of any debts." Moreover, the plaintiff's complaint is devoid of any contention that WSFS, as Trustee, has the collection of debts as its principal business purpose.

Third, the Plaintiff fails to plead any facts alleging that WSFS is using, or used a name other than its own to collect the mortgage debt. The plaintiff was advised that her mortgage loan was sold to defendant WSFS and that WSFS is the creditor on the plaintiff's mortgage loan moving forward. (Id.).

Consequently, the plaintiff fails to allege facts demonstrating that WSFS is a debt collector under the FDCPA. Instead, the plaintiff's allegations in the Complaint, the exhibits to the Complaint, and the recorded Corporate Assignment of the Mortgage establishes that WSFS is the owner of the Mortgage and was attempting to collect on a debt that was owed directly to it. As a result, WSFS is a creditor and not a debt collector. Because the defendants are not "debt collectors," the court concludes that they are not subject to the FDCPA. See 15 U.S.C. § 1692a(4). Therefore, the court will dismiss the plaintiff's FDCPA claim against WSFS.[1]

---

[1] The motion to dismiss appears to also be directed at the FDCPA claim against CMS. The parties' briefs, however, do not address CMS. Therefore, the motion will be denied with regard to Defendant CMS.

17

**Conclusion**

For the reasons set forth above, we find the plaintiff has sufficiently alleged an IIED, NIED, and Punitive Damages claim against Defendant CHS. We will deny CHS's motion to dismiss. The plaintiff has sufficiently pled facts for a FCEUA and UTPCPL claim. Therefore, we will deny the defendants' motion to dismiss the plaintiff's FCEUA and UTPCPL claims. Additionally, we will grant WSFS's motion to dismiss the plaintiff's FDCPA claim. An appropriate order follows.

Date: September 18, 2018          BY THE COURT:

                                                     **s/ James M. Munley**
                                                     **JUDGE JAMES M. MUNLEY**
                                                     **United States District Court**